UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON E. MORRIS,<br><br>Plaintiff,<br><br>v.<br><br>BRADFORD et al.,<br><br>Defendants. | No. 2:10-cv-2069 TLN DAD P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under 42 U.S.C. § 1983. Pending before the court is defendants' motion for summary judgment based on plaintiff's alleged failure to exhaust his available administrative remedies prior to filing suit as required. Plaintiff has filed an opposition to the motion, and defendants have filed a reply.

**BACKGROUND**

Plaintiff is proceeding on a third amended complaint in this civil rights action. Therein, plaintiff alleges that defendants Turner, Whitted, Manski, Biggs, Striegel, Green, Crawford, Guffee, Cruz, Low, Hernandez, and Brown retaliated against him in violation of the First Amendment and subjected him to cruel and unusual punishment in violation of the Eighth Amendment. Plaintiff has organized his allegations under the following six claim headings:

**Claim 1:** Plaintiff alleges that in August or September 2009, defendant Turner tried to make plaintiff withdraw an inmate appeal and, when he refused to do so, defendant Whitted

1

followed him and told him he was lucky he was not assigned to his building. A few months later, an alarm went off while plaintiff was on the yard. Plaintiff was on the ground, and defendant Whitted said "you mess with kids" in front of other inmates and guards while defendant Turner stood by and did nothing. According to plaintiff, both defendants Turner and Whitted know that inmates can be seriously hurt or killed for committing child molestations offenses. Plaintiff also alleges that defendants Turner and Whitted added this malicious lie to plaintiff's central file to further incite guards and prisoners to seriously hurt or kill him. (Third Am. Compl. at 5-5B.)

**Claim 2:** Plaintiff alleges that defendants Turner and Whitted continued to retaliate and incite violence against him and denied his inmate appeal concerning their alleged misconduct. Plaintiff told them he would see them in court, and defendant Turner said "you're a dead man, you won't make it to court. You got serious issues, you're over here hiding out. You said you're scared to go to the main line." Defendant Whitted also called plaintiff a "piece of shit" and told him to write and tell the warden that. Plaintiff alleges that a Sergeant Dragash told plaintiff to stop filing inmate appeals because defendants Turner and Whitted do not like it and would come after him if he continued to file them. (Third Am. Compl. at 5B-5C.)

**Claim 3:** Plaintiff alleges that around December 2008 and January 2009, he filed inmate appeals against officials in the inmate trust account office for "messing with" his money and for refusing to send him the indigent envelopes that he was entitled to receive. Plaintiff alleges that the officials retaliated against him for filing the inmate appeals by sending incomplete in forma pauperis forms to the court, which resulted in the court dismissing his case. (Third. Am. Compl. at 5C.)

**Claim 4:** Plaintiff alleges that throughout 2009 and the first part of 2010, after he had filed complaints against mailroom staff, mailroom staff began tampering with his mail. For example, according to plaintiff, he began receiving his legal mail late and already opened even though staff is not supposed to open legal mail. (Third Am. Compl. at 5C-5D.)

**Claim 5:** Plaintiff alleges that around November 2010, he filed inmate appeals against defendants Green, Biggs, Manski, and Striegel. In retaliation for filing those inmate appeals, plaintiff alleges that defendant Green came to plaintiff's cell and cussed him out. According to

2

1  plaintiff, the defendants further retaliated against him by not taking him to mental health
2  treatment groups. Plaintiff alleges that on January 10, 2011, the guards rotated, and the new
3  guards, defendants Crawford, Cruz, Brown, Guffee, Low and Hernandez, continued to retaliate
4  against him by not taking him to his mental health treatment groups. When plaintiff filed another
5  inmate appeal and was sent to a mental health crisis bed on June 9, 2011, plaintiff alleges that the
6  defendants further retaliated against him by stealing and destroying his religious and personal
7  property. (Third. Am. Compl. 5D-5F.)

8  **Claim 6:** Plaintiff alleges that he gave defendant Green a large envelope with legal
9  documents addressed to an attorney at the Loyola Law School Innocence Project. According to
10 plaintiff, the defendant disposed of the envelope instead of mailing it as required. Plaintiff alleges
11 that this is the same defendant (in Claim 5) who had verbally attacked him for filing an inmate
12 appeal against him and his fellow officers. Defendant Green also told plaintiff to stop filing
13 inmate appeals, and his life would be easier. (Third. Am. Compl. at 5F.)

14 At screening, the court found that plaintiff's third amended complaint appeared to state a
15 cognizable claim for relief against the defendants Turner, Whitted, Manski, Biggs, Striegel,
16 Green, Crawford, Guffee, Cruz, Low, Hernandez, and Brown and ordered service of the
17 complaint on them. (Doc. No. 18 at 1-2.) Defendants have since filed an answer and the pending
18 motion for summary judgment. (Doc. Nos. 41 & 50.) On October 2, 2014, the court stayed
19 discovery pending resolution of defendants' motion for summary judgment. (Doc. No. 51.)

20 **THE EXHAUSTION REQUIREMENT**

21 By the Prison Litigation Reform Act of 1995 ("PLRA"), Congress amended 42 U.S.C. §
22 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section
23 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other
24 correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.
25 § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether
26 they involve general circumstances or particular episodes, and whether they allege excessive
27 force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).
28 /////

1       The United States Supreme Court has ruled that exhaustion of prison administrative
2  procedures is mandated regardless of the relief offered through such procedures. See Booth v.
3  Churner, 532 U.S. 731, 741 (2001).  The Supreme Court has also cautioned against reading
4  futility or other exceptions into the statutory exhaustion requirement.  See id. at 741 n.6.
5  Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion
6  requirement by filing an untimely or otherwise procedurally defective administrative grievance or
7  appeal.  See Woodford v. Ngo, 548 U.S. 81, 90-93 (2006).  "[T]o properly exhaust administrative
8  remedies prisoners 'must complete the administrative review process in accordance with the
9  applicable procedural rules,' [ ] - rules that are defined not by the PLRA, but by the prison
10 grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S.
11 at 88).  See also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison
12 system's requirements 'define the boundaries of proper exhaustion.'").

13      In California, prisoners may appeal "any policy, decision, action, condition, or omission
14 by the department or its staff that the inmate or parolee can demonstrate as having a material
15 adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).
16 Most appeals progress through three levels of review.  See id. § 3084.7.  The third level of review
17 constitutes the decision of the Secretary of the California Department of Corrections and
18 Rehabilitation and exhausts a prisoner's administrative remedies.  See id. § 3084.7(d)(3).  A
19 California prisoner is required to submit an inmate appeal at the appropriate level and proceed to
20 the highest level of review available to him.  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir.
21 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).

22      A court may excuse a prisoner from complying with the PLRA's exhaustion requirement
23 if he establishes that the existing administrative remedies were effectively unavailable to him.
24 See Albino v. Baca, 747 F.3d 1162, 1172-73 (9th Cir. 2014).  For example, where prison officials
25 improperly screen out inmate grievances, they can render administrative remedies effectively
26 unavailable.  See Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010).  In such a case, "the
27 inmate cannot pursue the necessary sequence of appeals . . . ." Id.  See also Nunez v. Duncan,
28 591 F.3d 1217, 1226 (9th Cir. 2010) (excusing an inmate's failure to exhaust because he was

4

precluded from exhausting his administrative remedies by a warden's mistaken instruction to him that a particular unavailable document was needed for him to pursue his inmate appeal); Marella, 568 F.3d 1024 (excusing an inmate's failure to exhaust because he did not have access to the necessary grievance forms to timely file his grievance).

The PLRA exhaustion requirement is not jurisdictional but rather creates an affirmative defense that defendants must plead and prove. See Jones, 549 U.S. at 216 ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints."); Albino, 747 F.3d at 1168. A defendant may move for dismissal under Federal Rule of Civil Procedure 12(b)(6) "[i]n the rare event" that a prisoner's failure to exhaust is clear on the face of the complaint. Albino, 747 F.3d at 1168 & 1169. More typically, defendants are required to move for summary judgment under Federal Rule of Civil Procedure 56 and produce probative evidence that proves a prisoner's failure to exhaust. See id. at 1166. Specifically, "the defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Id. at 1172. If the defendant carries that burden, "the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. If the undisputed evidence viewed in the light most favorable to the prisoner demonstrates a failure to exhaust, the court should grant defendant's motion for summary judgment. Id. at 1166. On the other hand, if there are material facts in dispute, the court should deny defendant's motion summary judgment. Id.

**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS AND EVIDENCE**

In support of the pending motion for summary judgment for failure to exhaust administrative remedies prior to filing suit, defense counsel has submitted a statement of undisputed facts supported by citations to declarations signed under penalty of perjury by CSP-Sacramento Inmate Appeals Coordinator R. Jibson and Acting Chief of the Office of Appeals Zamora. In addition, defense counsel has submitted copies of plaintiff's inmate appeals and prison officials' responses thereto. The evidence submitted by defense counsel in support of the pending motion for summary judgment establishes the following.

5

At all relevant times, plaintiff was a prisoner incarcerated at CSP-Sacramento. At all relevant times, defendants Turner, Whitted, Manski, Biggs, Striegel, Green, Crawford, Guffee, Cruz, Low, Hernandez, and Brown were employed as correctional staff at CSP-Sacramento. (Defs.' SUDF 1-2, Pl.'s Third Am. Compl. at 4.)

Between August 2009 and January 2012, prison officials at the first level of review of the appeals process accepted twenty-six (26) of plaintiff's inmate appeals, thirteen (13) of which mention the defendants, retaliation, or conduct alleged in plaintiff's complaint. (Defs.' SUDF 2-3, Pl.'s Third Am. Compl. at 4.)

In Appeal Log No. SAC-B-09-01732, plaintiff complained about defendant Turner being assigned the inmate appeal that plaintiff had filed against the trust account office. Plaintiff asked that defendant Turner be reprimanded for not doing her job and that someone else be assigned to review his inmate appeal. The second level of review partially granted that appeal. At the third level, the appeal was not accepted for review. (Defs.' SUDF 5, Jibson Decl. & Ex. 6, Zamora Decl. & Ex. 1.)

In Appeal Log No. SAC-B-09-01763, plaintiff complained that on December 17, 2009, defendant Whitted said to plaintiff "You mess with kids" several times in the presence of other inmates and staff, including defendant Turner, who did nothing to stop defendant Whitted's conduct. Plaintiff complained that defendant Whitted said this in retaliation for plaintiff writing to the warden about him several months earlier. At the second level of review this inmate appeal was partially granted. At the third level of review the appeal was not accepted for review. (Defs.' SUDF 6, Jibson Decl. & Ex. 7, Zamora Decl.)

In Appeal Log No. SAC-F-10-00229, plaintiff complained that the trust account office was retaliating against him for filing inmate appeals by denying him indigent envelopes and sending blank in forma pauperis forms to the court. At the first level of review this appeal was partially granted. Plaintiff did not seek further review. (Defs.' SUDF 7, Jibson Decl. & Ex. 9.)

In Appeal Log No. SAC-B-10-00380, plaintiff complained that on February 2, 2010, he attempted to commit suicide by hanging himself because his coping devices (tv and radio) were taken from him based on fraudulent, stacked rules violation reports. Plaintiff claimed that

Lieutenant Faris, Lieutenant Cannedy, defendant Turner, Dr. Nguyen, and Dr. Grubbs were responsible for those rules violation reports. At the first level of review this appeal was partially granted. (Defs.' SUDF 8, Jibson Decl. & Ex. 11.)

In Appeal Log No. SAC-S-10-01026, plaintiff complained that on June 29, 2010, Officer Epp and Sergeant Tratton issued him a rules violation report in retaliation for his refusing to sign a double-cell chrono. That inmate appeal did not mention the defendants in this case and did not allege that the retaliation was for plaintiff's filing of inmate appeals but rather was for refusing to sign a double-cell chrono. At the second and third levels of review plaintiff's appeal was denied. (Defs.' SUDF 9, Jibson Decl. & Ex. 14, Zamora Decl.)

In Appeal Log No. SAC-P-10-01537, plaintiff complained that on November 27, 2010, defendant Green cussed him out in retaliation for his filing of an inmate appeal. Plaintiff withdrew this inmate appeal at the first level of review and did not resubmit it. (Defs.' SUDF 10, Jibson Decl. & Ex. 17.)

In Appeal Log No. SAC-P-11-00079, plaintiff complained that on December 29, 2010, defendant Biggs did not let plaintiff use the clippers to shave. Plaintiff did not complain of retaliation or complain that defendant Biggs or anyone else refused to take plaintiff to his mental health treatment group. Plaintiff withdrew this inmate appeal at the first level of review and did not resubmit it. (Defs.' SUDF 11, Jibson Decl. & Ex. 19.)

In Appeal Log. No. SAC-P-11-00454, plaintiff complained that on April 16, 2011, and May 8, 2011, defendant Crawford refused to give plaintiff a Halal-approved meal in retaliation for plaintiff's filing of inmate appeals against him. Plaintiff did not complain that defendant Crawford or anyone else refused to take plaintiff to his mental health treatment groups in this inmate appeal. Nor did plaintiff complain that defendant Crawford or anyone else stole or destroyed his religious and personal property. At the first level of review this inmate appeal was granted and plaintiff did not seek further review. (Defs.' SUDF 12, Jibson Decl. & Ex. 21.)

In Appeal Log No. SAC-P-11-00497, plaintiff complained that on May 31, 2011, defendant Hernandez cussed him out because he was not stripped down waiting to be searched prior to being taken to group. Plaintiff also complained in this inmate appeal that during an escort

7

defendant Hernandez cussed him out again and waved around his baton making plaintiff fear that he was going to be attacked. Plaintiff requested that he not be retaliated against and that defendant Hernandez receive instructions on "guard etiquette" and dealing with mentally-ill persons. Plaintiff did not complain in this appeal that defendant Hernandez or anyone else refused to take plaintiff to his mental health treatment or stole or destroyed his religious and personal property. At the first level of review this inmate appeal was partially granted and plaintiff did not seek further review. (Defs.' SUDF 13, Jibson Decl. & Ex. 22.)

In Appeal Log No. SAC-P-11-00564, plaintiff complained that on May 26, 2011, defendant Hernandez "berated, taunted and cussed at" him all the way from the block to the Treatment Center in retaliation for not being undressed when officers came by to take him to group. Plaintiff further complained that Hernandez cussed him out twice since May 26, 2011, the last time being July 12, 2011. At the second level of review this inmate appeal was denied. At the third level of review this inmate was not accepted. (Defs.' SUDF 14, Jibson Decl. & Ex. 23, Zamora Decl.)

In Appeal Log No. SAC-A-11-00889, plaintiff complained that on June 10, 2011, defendants Guffee, Cruz, Hernandez, Low, Brown, and Crawford stole and destroyed his personal and religious property in retaliation for his filing of inmate appeals. Plaintiff withdrew this inmate appeal at the first level of review and did not seek further review. (Defs.' SUDF 15, Jibson Decl. & Ex. 24, Zamora Decl.)

In Appeal Log No. SAC-P-11-00856, plaintiff complained that in August 2011, FA4 block staff Guffee, Low, Brown, Garcia, Rosario, Cruz, and Martinez refused to take him to the law library for a ducat. In this inmate appeal plaintiff did not complain of retaliation or that staff refused to take plaintiff to his mental health treatment groups. At the first level of review this inmate appeal was partially granted and plaintiff did not seek further review. (Defs.' SUDF 16, Jibson Decl. & Ex. 26.)

In Appeal Log No. SAC-L-11-01076, plaintiff complained that the mailroom staff delivered his mail late and deliberately opened it. In this inmate appeal plaintiff did not complain of retaliation. At the first level of review this inmate appeal was partially granted and plaintiff

1  did not seek further review.  (Defs.' SUDF 17, Jibson Decl. & Ex. 27.)

2  **ANALYSIS**

3  As noted above, plaintiff is proceeding against defendants on various First Amendment
4  retaliation and Eighth Amendment cruel and unusual punishment claims.  Below, the court will
5  address defendants' contentions on summary judgment that plaintiff failed to properly exhaust his
6  administrative remedies with respect to each of these claims prior to filing suit as required.

7  **Claims 1 & 2**

8  The court finds that defendants have carried their burden of demonstrating that plaintiff
9  failed to properly exhaust Claims 1 and 2 of his third amended complaint against defendants
10 Turner and Whitted.  Defense counsel argues that plaintiff failed to exhaust these claims because
11 he did not properly pursue Appeal Log No. SAC-B-09-01763 through the third level of review.
12 (Defs.' Mem. of P. & A. at 8-9.)  Plaintiff argues in opposition that the first level of review
13 responded to his appeal with an ambiguous result, so he pursued his inmate appeal to the second
14 level of review where he obtained the same result.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at
15 10-11 & Ex. B.)  In plaintiff's view, these ambiguous responses by prison officials to his appeals
16 prove that there was no further remedy available to him.  (Id.)

17 Based on the undisputed evidence before the court on summary judgment, in Appeal Log
18 No. SAC-B-09-01763, plaintiff complained that defendants Turner and Whitted retaliated against
19 him on December 17, 2009, when defendant Whitted said to plaintiff "you mess with kids" in
20 front of other inmates and guards, and defendant Turner did nothing.  (Defs.' Mot. for Summ. J.,
21 Jibson Decl. Ex. 7, Pl.'s Opp'n to Defs.' Mot. for Summ. J. Ex. B.)  Prison officials at the first
22 and second levels of review processed plaintiff's appeal as a staff complaint and partially granted
23 that inmate appeal because they had conducted an inquiry into plaintiff's allegations.  (Id.)  Upon
24 completion of the inquiry at the first and second levels of review, prison officials determined that
25 staff did not violate CDCR policy and specifically advised plaintiff of the following:

26 > Allegations of staff misconduct do not limit or restrict the
> availability of further relief via the inmate appeals process.  If you
27 > wish to appeal the decision, you must submit your staff complaint
> appeal through all levels of appeal review up to, and including, the
28 > Director's Level of Review.  Once a decision has been rendered at

9

> the Director's Level of Review, your administrative remedies will be considered exhausted.

(Id.)  Nonetheless, plaintiff did not pursue his inmate appeal to the Director's Level of Review.

The Ninth Circuit has held that a prisoner "may initiate litigation in federal court only after the administrative process ends and leaves his grievances unredressed." Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006). See also McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002) ("Requiring dismissal without prejudice when there is no presuit exhaustion provides a strong incentive that will further these Congressional objectives; permitting exhaustion *pendente lite* will inevitably undermine attainment of them."). Here, plaintiff did not complete the administrative appeals process with respect to Inmate Appeal Log No. SAC-B-09-01763 because he never pursued that inmate appeal to the third level of review even though he was dissatisfied with prison officials' allegedly "ambiguous" response to his grievance at the first and second levels of review. See Woodford, 548 U.S. at 86 (prisoner must pursue claim if it is denied or "the prisoner otherwise is dissatisfied with the result."). This was not an instance where no pertinent relief remained available to plaintiff. See Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) ("[t]he obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'").

Accordingly, defendants' motion for summary judgment based on plaintiff's failure to exhaust his administrative remedies prior to filing suit with respect to plaintiff's Claims 1 and 2 should be granted.

**Claim 3**

The court also finds that defendants have carried their burden of demonstrating that plaintiff failed to properly exhaust Claim 3 of his third amended complaint against prison officials at the trust account office. Defense counsel argues that plaintiff failed to exhaust his administrative remedies with respect to this claim because he did not properly pursue Appeal Log No. SAC-F-10-00229 through the third level of review. (Defs.' Mem. of P. & A. at 9-10.) Plaintiff argues in opposition that prison officials at the first level of review responded to his appeal with an ambiguous result. Once more, plaintiff argues that the allegedly ambiguous

1   response by prison officials at the first level of review proves that there was no further remedy
2   available to him through the administrative process.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at
3   10-11 & Ex. C.)

4       Based on the undisputed evidence before the court on summary judgment, in Inmate
5   Appeal Log No. SAC-F-10-00229, plaintiff complained that he had not received the indigent
6   envelopes he was entitled to for the month of January 10, 2010.  (Jibson Decl. Ex. 9, Pl's Opp'n
7   to Defs' Mot. for Summ. J. Ex. C.)  He also complained that officials in the trust account office
8   were retaliating against him for filing an inmate appeal by denying him indigent envelopes and by
9   sending incomplete in forma pauperis applications to the court.  (Id.)  Prison officials at the
10  informal level of review denied that inmate appeal without explanation, and plaintiff appealed.
11  (Id.)  Prison officials at the first level of review partially granted plaintiff's inmate appeal and
12  explained that plaintiff's indigent envelopes were sent to him, and that he signed for them.  (Id.)
13  Prison officials also explained to plaintiff that he was required to complete his own in forma
14  pauperis application and that the trust office could not do so.  (Id.)  Plaintiff did not seek further
15  review with regard to this inmate appeal.

16      As explained above with respect to plaintiff's Claims 1 and 2, the Ninth Circuit has held
17  that a prisoner "may initiate litigation in federal court only after the administrative process ends
18  and leaves his grievances unredressed."  Vaden, 449 F.3d at 1051.  See also McKinney, 311 F.3d
19  at 1200.  In this instance, plaintiff did not complete the administrative appeals process with
20  respect to Inmate Appeal Log No SAC-F-10-00229 because he never pursued that appeal beyond
21  the first level of review even though he was dissatisfied with prison officials' allegedly
22  "ambiguous" response to his complaint at the first level of review.  See Woodford, 548 U.S. at 86
23  (prisoner must pursue claim if it is denied or "the prisoner otherwise is dissatisfied with the
24  result.").  This was not an instance where no pertinent relief remained available to plaintiff.  See
25  Brown, 422 F.3d at 935 ("[t]he obligation to exhaust 'available' remedies persists as long as *some*
26  remedy remains 'available.'").

27      Accordingly, defendants' motion for summary judgment based on plaintiff's failure to
28  exhaust his administrative remedies prior to filing suit should be granted with respect to

plaintiff's Claim 3.

**Claim 4**

The court finds that defendants have carried their burden of demonstrating that plaintiff failed to properly exhaust Claim 4 of his third amended complaint against prison officials in the mailroom. Defense counsel argues that plaintiff failed to exhaust this claim because he did not mention retaliation as part of his complaint in Inmate Appeal Log No. SAC-L-11-01076, and he also did not pursue that inmate appeal beyond the first level of review. (Defs.' Mem. of P. & A. at 10-11.) Plaintiff argues in opposition that he is not required to state a legal issue or name the legal wrong that was done in his inmate appeal in order to satisfy the exhaustion requirement. (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 11-12.) In addition, plaintiff argues again that prison officials at the first level of review responded to his inmate appeal in an ambiguous manner, which proves that there was no further remedy available to him. (Id.)

In Inmate Appeal Log No. SAC-L-11-01076, plaintiff complained as follows:

> Today 1/24/2011 I received a piece of legal mail from the courts that was date[d] 10/17/2011 CSP-Sac Mailroom. I receive it and a wk. late and it is deliberately opened and contents read. The envelope was taped closed and I could easily tell the contents removed and read. That's is [sic] inexcusable. Legal mail is priority mail and a week wrong and completely incompetent as is the deliberately opening it. Legal mail is suppose[d] to be privileged. And this is not the first time either.

(Defs.' Mot. for Summ. J., Jibson Decl. Ex. 27, Pl.'s Opp'n to Defs.' Mot. for Summ. J. Ex. D.) Prison officials at the first level of review partially granted this inmate appeal and noted that it was difficult to determine who opened plaintiff's mail and that all mailroom personnel receive ongoing training on Confidential Mail regulations. (Id.) Plaintiff did not seek further administrative review with respect to this grievance.

The Ninth Circuit has made clear that:

> A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.

1    Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).  See also Jones, 549 U.S. at 219 (citing
2    Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose
3    of a grievance is to alert prison officials to a problem, not to provide personal notice to a
4    particular official that he may be sued; the grievance process is not a summons and complaint that
5    initiates adversarial litigation.")).

6            In this case, the court finds that plaintiff's Inmate Appeal Log No. SAC-L-11-01076
7    would not have put prison officials on notice of any retaliation problem he had with CSP-
8    Sacramento mailroom staff.  Specifically, as defense counsel observes, plaintiff's inmate appeal
9    included no mention of retaliation whatsoever.  Nor did plaintiff's inmate appeal submitted with
10   respect to his mail mention any constitutionally protected conduct on his part or suggest any
11   retaliatory motive on the part of any prison official in handling his mail.  See, e.g., Walton v.
12   Hixson, No. CIV S-09-1246 GEB CKD, 2011 WL 6002919 at *2 (E.D. Cal. Nov. 30, 2011)
13   (finding that a prisoner's inmate grievance complaining about prison official's interference with
14   his praying was not sufficient to alert prison to plaintiff's claim that the alleged interference was
15   in retaliation for plaintiff submitting a grievance against the official); Simpson v. Feltsen, No.
16   2:09-cv-00302 MSB, 2010 WL 5288181 at *5  (E.D. Cal. Dec. 17, 2010) (assuming that a
17   prisoner's grievance was improperly screened out, even if it had been accepted and pursued it
18   would not have sufficed to exhaust a retaliation claim because it made no mention of the
19   prisoner's exercise of his First Amendment rights that allegedly precipitated the prisoner's
20   retaliatory transfer); Martinez v. Adams, No. 1:09cv00899 LJO DLB, 2010 WL 3912359 at *5
21   (E.D. Cal. Oct. 5, 2010) (finding a failure to exhaust a retaliation claim because plaintiff's
22   grievances did not "mention retaliation or set forth facts that would alert a prison official to
23   retaliatory conduct for protected conduct"); Gonzalez v. Doe, No. 07-CV-1962 W (POR), 2010
24   WL 3718873 at *5 (S.D. Cal. Sept. 20, 2010) ("Even construed liberally, Plaintiff's comments in
25   his Director's level appeal cannot be read as anything more than claims regarding the seriousness
26   of having false confidential information in a prison file, which does not provide notice that the
27   grievances included retaliation."); Trevino v. McBride, No. 1:08-cv-1649 AWI DLB PC, 2010
28   WL 2089660 at *3 (E.D. Cal. May 21, 2010) (finding plaintiff had "not sufficiently alerted the

13

1  prison officials to a problem regarding retaliatory acts by correctional officers . . . as there is no
2  linkage mentioned between previously filed lawsuits and the Defendants' deprivation of his
3  property."); Thomas v. Sheppard-Brooks, No. 1:06-cv-01332 LJO YNP PC, 2009 WL 3365872 at
4  *5 (E.D. Cal. Oct. 16, 2009) (prisoner's inmate grievance did not provide prison officials with
5  notice of retaliation claim because he failed to notify prison officials that his cell housing without
6  light was retaliatory).  This case is no different than those cited above.
7      Moreover, as explained above with respect to plaintiff's Claims 1, 2, and 3, the Ninth
8  Circuit has held that a prisoner "may initiate litigation in federal court only after the
9  administrative process ends and leaves his grievances unredressed."  Vaden, 449 F.3d at 1051.
10 See also McKinney, 311 F.3d at 1200.  In this case, plaintiff did not complete the administrative
11 appeals process with respect to Inmate Appeal Log No. SAC-L-11-01076 because he never
12 pursued that inmate appeal beyond the first level of review even though he was dissatisfied with
13 prison officials' allegedly "ambiguous" response to his complaint.  See Woodford, 548 U.S. at 86
14 (prisoner must pursue claim if it is denied or "the prisoner otherwise is dissatisfied with the
15 result.").  This was not an instance where no pertinent relief remained available to plaintiff.  See
16 Brown, 422 F.3d at 935 ("[t]he obligation to exhaust 'available' remedies persists as long as *some*
17 remedy remains 'available.'").
18      Accordingly, defendants' motion for summary judgment based on plaintiff's failure to
19 exhaust his administrative remedies prior to filing suit should be granted with respect to
20 plaintiff's Claim 4.
21      **Claim 5**
22      The court finds that defendants have also carried their burden of demonstrating that
23 plaintiff failed to properly exhaust Claim 5 of his third amended complaint against defendants
24 Green Biggs, Manski, Striegel, Crawford, Cruz, Brown, Guffee, Low, and Hernandez.  First, the
25 court will address defense counsel's argument that plaintiff failed to exhaust his claim that the
26 aforementioned defendants retaliated against him by not taking him to his mental health group.
27 In this regard, defense counsel argues that plaintiff did not file any inmate appeals complaining
28 about defendants not taking him to his mental health group.  (Defs.' Mem. of P. & A. at 11-13.)

In opposition to the motion, plaintiff argues that he did in fact file a staff complaint against defendants Green, Biggs, Manski, and Striegel for not taking him to his mental health group in retaliation for filing inmate appeals, but that Inmate Appeals Coordinator Daly unjustifiably cancelled that complaint. (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 13 & Ex. G.) Plaintiff also argues that he filed a staff complaint against defendants Crawford, Cruz, Brown, Guffee, Low, and Hernandez for not taking him to his mental health group in retaliation for his filing of inmate appeals, but that Appeals Coordinator Donahoo unjustifiably cancelled that complaint as well. (Id. at 14 & Ex. J.) Thus, plaintiff appears to argue that the court should excuse him from the exhaustion requirement due to the actions of prison officials.

Construing the evidence presented on summary judgment in the light most favorable to plaintiff, plaintiff has not created genuine dispute as to any material fact with respect to his pre-suit exhaustion of this claim. As to plaintiff's retaliation claim against defendants Green, Biggs, Manski, and Striegel, according to plaintiff's evidence, on February 11, 2011, he submitted an inmate appeal complaining that as far back as November 2010, defendants Green, Biggs, Manski, and Striegel have retaliated against him for filing inmate appeals by not taking him to his mental health group. (Pl.'s Opp'n to Defs.' Mot. for Summ. J., Ex. H.) Prison officials screened out plaintiff's inmate appeal three times for various reasons, including for not submitting the appeal on the departmentally approved form, because plaintiff's grievance failed to state facts or specify an act or decision consistent with plaintiff's allegations, and/or because plaintiff failed to address the issue in his appeal informally by utilizing the CDCR-22 form/process prior to submitting the CDC-602 appeal form. (Id.) Ultimately, on April 19, 2011, prison officials cancelled plaintiff's inmate appeal because he continued to submit a rejected appeal while disregarding appeal staff's previous instructions to correct the appeal. (Id.) Prison officials informed plaintiff that he could file a separate appeal of the cancellation decision and that if his appeal of the cancellation decision was granted; he could then resubmit his original inmate appeal. (Id.)

As to plaintiff's retaliation claim against defendants Crawford, Cruz, Brown, Guffee, Low, and Hernandez, according to plaintiff's evidence, on April 23, 2011, he submitted an inmate appeal complaining that defendants Crawford, Cruz, Guffee, and Low had retaliated against him

15

for filing inmate appeals by not taking him to his mental health group. (Pl.'s Opp'n to Defs.' Mot. for Summ. J., Ex. J.) Prison officials screened out plaintiff's inmate appeal three times for various reasons, including for not submitting the appeal on the departmentally approved form and because the appeal failed to state facts or specify an act or decision consistent with plaintiff's allegations. (Id.) Ultimately, on June 24, 2011, prison officials cancelled plaintiff's inmate appeal because he continued to submit a rejected appeal while disregarding appeal staff's previous instructions to correct the appeal. (Id.) Prison officials informed plaintiff that he could file a separate appeal of the cancellation decision and that if his appeal of the cancellation decision was granted; he could then resubmit the original inmate appeal. (Id.)

The Ninth Circuit has held that a court may excuse a prisoner from complying with the exhaustion requirement when "a prison official renders administrative remedies effectively unavailable by improperly screening a prisoner's grievances …." See Sapp, 623 F.3d at 822. To avail himself of the exception a plaintiff must establish:

> (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations.

Id. at 823-24.

Here, even assuming for the sake of argument that plaintiff's screened out appeals would have sufficed to exhaust the claims he now presents to this court, plaintiff has not established that prison officials screened out his inmate grievances for reasons that are not consistent with or unsupported by applicable regulations. See Woodford, 548 U.S. at 90-91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."). Plaintiff merely summarily contends that prison officials unjustifiably cancelled his inmate appeals in question to shield their cohorts. Such a conclusory and unsupported claim does not suffice because it does not establish that prison officials screened out plaintiff's grievances for reasons inconsistent with or unsupported by applicable regulations. See Sapp, 623 F.3d at 823-24.

Moreover, even if plaintiff believed that prison officials improperly cancelled his inmate appeals, both cancellation decisions informed him that he could appeal the cancellation decision

and that if prison officials granted his appeal of the cancellation decision, he could have resubmitted his original inmate appeal. Plaintiff has submitted no evidence to this court showing that he appealed either of the cancellation decisions at issue. See Sapp, 623 F.3d at 826 (noting that if plaintiff believed prison officials improperly screened out his appeal he could have challenged the decision "as boilerplate at the bottom of the screening form advised him he could do."); Woodford, 548 U.S. at 86 (prisoner must pursue claim if it is denied or "the prisoner otherwise is dissatisfied with the result."); Brown, 422 F.3d at 935 ("[t]he obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'").

Here, the undersigned finds that, by failing to appeal the cancellation decisions at issue, plaintiff did not take the necessary reasonable and appropriate steps to exhaust his claims and could not have had a reasonable and good faith belief that administrative remedies were rendered effectively unavailable to him. This conclusion is consistent with that reached in other similar cases before this court. See, e.g., Sims v. Wegman, No. 1:11-cv-00931 DLB PC, 2013 WL 2384345 at *5 (E.D. Cal. May 30, 2013) (plaintiff could not have a reasonable good faith belief that he could no longer submit an administrative appeal because prison officials instructed him after his fourth rejection to submit a new CDC-602); Martinez v. Kings County, No. 1:10-cv-01569 AWI DLB PC, 2013 WL 1192482 at *2 (E.D. Cal. Mar. 21, 2013) (plaintiff could not have a reasonable good faith belief that administrative remedies were effectively unavailable because he received instructions on how to appeal a screen out he believed was improper); Barrett v. Cate, No. 1:09-cv-01741 LJO JLT (PC), 2011 WL 6753993 at *10 (E.D. Cal. Dec. 23, 2011) (despite improper screening of inmate appeal plaintiff should not be excused from exhaustion requirement because he was afforded an opportunity to contest the screening decision but chose not to do so); Williams v. Cate, No. 1:09-cv-00468 OWW JLT, 2011 WL 444788 at *8-9 (E.D. Cal. Feb. 8, 2011) (same), adopted in part, rejected in part on other grounds by, 2011 WL 1121965 (E.D. Cal. Mar. 24, 2011).

Accordingly, defendants' motion for summary judgment based on plaintiff's failure to exhaust his administrative remedies prior to filing suit should be granted with respect to these aspects of plaintiff's Claim 5.

1    The undersigned now turns to defense counsel's argument that plaintiff failed to exhaust
2    the remaining aspects of his Claim 5 because, although he pursued inmate appeals concerning his
3    complaints he withdrew them instead of pursuing them to the third level of review.  In this regard,
4    defense counsel argues that plaintiff failed to exhaust his claim that defendant Green directed
5    vulgar language at him on November 27, 2010, in retaliation for plaintiff's filing an inmate appeal
6    because although he filed Inmate Appeal Log No. SAC-P-10-01537 and complained about this
7    incident he withdrew that inmate appeal at the first level of review and did not resubmit it.
8    (Defs.' Mem. of P. & A. at 11.)  Likewise, defense counsel argues that plaintiff failed to exhaust
9    his claim that defendants Crawford, Cruz, Brown, Guffee, Low, and Hernandez retaliated against
10   him by stealing and destroying his religious and personal property because although he submitted
11   Inmate Appeal Log No. SAC-A-11-00889 and complained about this incident, he withdrew that
12   inmate appeal at the first level of review and did not resubmit it.  (Id. at 12.)  In opposition to the
13   motion, plaintiff argues that he resolved his complaints informally and, therefore, did not need to
14   pursue the inmate appeals any further and instead withdrew them.  (Pl.'s Opp'n to Defs.' Mot. to
15   Dismiss, Exs. F & I.)

16   Based on the undisputed evidence before the court on summary judgment, in Appeal Log
17   No. SAC-P-10-01537, plaintiff complained that defendant Green stopped in front of his cell and
18   cursed at him for naming him in an inmate appeal plaintiff had recently filed.  (Defs.' Mot. for
19   Summ. J., Jibson Decl. Ex. 17, Pl.'s Opp'n to Defs.' Mot. for Summ. J. Ex. F.)  At the first level
20   of review, plaintiff withdrew his inmate appeal.  In doing so, plaintiff wrote merely "I withdraw
21   this 602 this date 12/25/10."  (Id.)  In Appeal Log No. 11-00889, plaintiff complained that
22   defendants Cruz, Hernandez, Low, Brown, and Crawford stole and destroyed his property when
23   he went out to a crisis bed.  (Defs.' Mot. for Summ. J., Jibson Decl. Ex. 24, Pl.'s Opp'n to Defs.'
24   Mot. for Summ. J. Ex. I.)  At the first level of review, plaintiff withdrew this inmate appeal.  In
25   doing so, plaintiff wrote "The issues with the missing property have been resolved."  (Defs.' Mot.
26   for Summ. J., Jibson Decl. Ex. 24, Pl.'s Opp'n to Defs.' Mot. for Summ. J. Ex. I.)

27   As discussed above, the Ninth Circuit has held that a prisoner "may initiate litigation in
28   federal court only after the administrative process ends and leaves his grievances unredressed."

1  Vaden, 449 F.3d at 1051.  See also McKinney, 311 F.3d at 1200.  In this instance, plaintiff did
2  not complete the administrative appeals process with respect to Appeal Log No. SAC-P-10-01537
3  or Appeal Log No. 11-00889 because he withdrew these appeals at the first formal level of
4  review.  Now, years later, plaintiff contends in an unverified opposition without supporting
5  declaration that he was satisfied with the informal resolution he reached with prison officials with
6  respect to his complaints.  However, plaintiff has not offered any evidence that addresses how or
7  if the issues presented in these first level appeals were resolved.  Nor has plaintiff adequately
8  explained why or in what way he was satisfied with the response to his complaints which caused
9  him to withdraw the appeals.  Based on the record in this case, there is no basis at all upon which
10 to conclude that no further relief was available to plaintiff through the administrative grievance
11 process when he withdrew these two inmate appeals.  See Brown, 422 F.3d at 935 (a prisoner has
12 no "exhaustion obligation once it is clear that no further relief is available . . . .").[1]

13 Accordingly, defendants' motion for summary judgment based on plaintiff's failure to
14 exhaust his administrative remedies with respect to these aspects of plaintiff's Claim 5 also
15 should be granted.

16 **Claim 6**

17 Plaintiff concedes in his opposition to defendants' motion for summary judgment that he
18 failed to properly exhaust Claim 6 of his third amended complaint concerning defendant Green
19 allegedly disposing of a large envelope full of legal documents addressed to the Loyola Law
20 School Innocence Project.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 14-15.)

21 It is well established that "[a] prisoner's concession to nonexhaustion is a valid ground for
22 dismissal."  Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003), overruled on other grounds
23 by Albino, 747 F.3d 1162 (9th Cir. 2014).

24 /////

---

[1] If a prisoner plaintiff could file an inmate appeal, withdraw it, file a lawsuit and then defeat a motion to dismiss by merely proclaiming, without more, at that late date that he had been satisfied by an informal response to his withdrawn inmate appeal at the first level, then the requirement that a prisoner plaintiff exhaust administrative remedies prior to filing suit would effectively be rendered a nullity.

19

Accordingly, the court will recommend dismissal of plaintiff's Claim 6 due to plaintiff's conceded failure to exhaust administrative his administrative remedies with respect to that claim prior to filing suit.

## CONCLUSION

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment based on plaintiff's failure to exhaust administrative remedies (Doc. No. 41) be granted with respect to plaintiff's Claims 1-5;

2. Plaintiff's Claim 6 be dismissed without prejudice due to plaintiff's conceded failure to exhaust administrative remedies prior to filing suit; and

3. This action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 23, 2015

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
morr2069.57fte